UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY SCHWARTZ and CARI SCHWARTZ, Individually and as the Parents and Natural Guardians of J.S., a Minor, | ) ) ) ) | Cause No. 1:20-cv-00069 RLM-MPB |
| *Plaintiffs* | ) ) ) | |
| v. | ) ) | |
| ANTHEM INSURANCE COMPANIES, INC., D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD, ACCREDO HEALTH GROUP, INC., EXPRESS SCRIPTS, INC., and KROGER SPECIALTY PHARMACY, INC., | ) ) ) ) ) ) ) | |
| *Defendants* | ) ) | |

ORDER

Plaintiffs Jeffrey and Cari Schwartz, individually and as the parents and
natural guardians of J.S., a minor, sued defendants Anthem Insurance
Companies, Express Scripts, Inc. (the specialty pharmacy of Anthem's pharmacy
network), Accredo Health Group, Inc. (a subsidiary of Express Scripts), Kroger
Prescription Plans, and Kroger Specialty Pharmacy over events that led to J.S.
contracting respiratory syncytial virus because she didn't receive a prescribed
vaccine. The Schwartzes have since amended their complaint and voluntarily
dismissed Kroger Prescription Plans. The Anthem defendants—Anthem, Express
Scripts, and Accredo—collectively have filed motions to dismiss the Schwartzes's
complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief can be granted. For the following reasons, the court DENIES the Anthem defendants' motions to dismiss [Doc. Nos. 67 and 72].

The amended complaint alleges the following facts. J.S. was born on February 14, 2017, at 23 weeks gestation and weighing only 1.5 pounds. As an extremely preterm baby, J.S. needed several specialty physicians. In August 2017, J.S.'s doctors recommended that she be prescribed Synagis, an antibody used to immunize children against respiratory syncytical virus, because her premature birth had resulted in a compromised immune system. Respiratory syncytical virus season is from November to April, and Synagis is highly effective at preventing sickness if given once a month. Synagis requires prior authorization for use. Prior authorization is a health plan requirement that the health plan (insurer) authorize a particular prescription drug for payment by before the drug is provided to a particular covered individual. Ind. Code § 27-1-37.4-3. A health plan (insurer) must accept and respond to a request for "prior authorization" delivered to the health plan (insurer) by a covered individual's: (1) prescribing health care provider; or (2) dispensing pharmacist…" Ind. Code § 27-1-37.4-4. A single monthly dose of Synagis costs more than $3,000 without insurance.

Jeff Schwartz is employed by, and has primary health insurance for J.S. through, Kroger Prescription Plans, Inc. ("Kroger Plans"). Kroger Plans uses Kroger Specialty Pharmacy, Inc. ("Kroger Pharmacy") as its specialty pharmacy. The Schwartzes' health insurance through Kroger Plans doesn't start to cover medical expenses until the Schwartzes meet their annual deductible for the

calendar year, and the annual deductible restarts every January. Given J.S.'s needs as an extremely preterm baby, Jeff and Cari acquired secondary health insurance for J.S. through a Medicaid program administered by Anthem to cover J.S.'s medical expenses at the beginning of the year before the Schwartzes met the annual deductible on the Kroger Plans policy. Anthem uses Express Scripts, Inc. as its pharmacy benefit manager, and Express Scripts uses Accredo Health Group, Inc. ("Accredo") as its specialty pharmacy.

In November and December 2017, J.S. received her first two doses of Synagis that were covered by the Kroger Plans policy and fulfilled by Kroger Pharmacy. When January rolled around, Anthem received a prior authorization request for J.S.'s third dose of Synagis from Kroger Pharmacy because the Schwartzes hadn't yet met their annual deductibles on the Kroger Plans policy for 2018. Anthem said it approved the prior authorization request on January 25, 2018, but Kroger Pharmacy called the Schwartzes after it sent Anthem the prior authorization request to inform them that Anthem and Express Scripts wouldn't allow Kroger Pharmacy to fill the prescription because Anthem required the prescription to be filled by their own specialty pharmacy, Accredo.

The Schwartzes called Anthem several times over the next few weeks and were assured that Kroger Pharmacy would be allowed to dispense J.S.'s third dose of Synagis very soon. However, each time Kroger Pharmacy followed up with Anthem, Anthem said that Accredo would have to fill J.S.'s prescription. The administrative confusion persisted through the middle of February. Kroger Pharmacy maintains that Anthem refused to allow it to fill the prescription for

J.S.'s third dose of Synagis because it wanted Accredo to act as the specialty pharmacy to fill and profit from the prescription. Anthem, on the other hand, maintains that Kroger Pharmacy couldn't fill the prescription for J.S.'s third dose of Synagis because it didn't submit the request for prior authorization to Anthem with all the required information. The back-and-forth continued until the effective window for J.S. to take her third dose of Synagis had passed, and J.S. ultimately ended up contracting respiratory syncytical virus and spent 20 days in the hospital, 17 of those on life support.

The Schwartzes sued the defendants alleging that J.S. contracted respiratory syncytial virus and the Schwartzes incurred damages because of the defendants' negligence in failing to exercise reasonable care to properly submit and promptly fill J.S.'s prescription. The Anthem defendants have moved to dismiss the Schwartzes complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

When considering a defendant's motion to dismiss, the court "take[s] as true all well-pleaded facts and allegations in the plaintiff's complaint, . . . and the plaintiff is entitled to all reasonable inferences that can be drawn from the complaint." Bontkowski v. First Nat. Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Factual allegations must give the defendant fair notice of the claims being asserted and the grounds upon which they rest and "be enough to raise a right to relief above the speculative

level on the assumption that all of the complaint's allegations are true." <u>Bell</u>
<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007). "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct
alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. In other words, a complaint must
give "enough details about the subject-matter of the case to present a story that
holds together." <u>McCauley v. City of Chicago</u>, 671 F.3d 611, 616 (7th Cir. 2011).
A pleading that merely offers "labels and conclusions" or "a formulaic recitation
of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. at
678.

The Anthem defendants argue that the Schwartzes' complaint should be
dismissed for three reasons. First, the Kroger plan is an ERISA plan, and that
ERISA's preemption provision displaces all state law claims that fall within its
sphere. The Anthem plan isn't an ERISA plan by itself, but Anthem says it falls
within ERISA's preemption sphere because it relates to an ERISA plan: coverage
under the Anthem plan depends on whether the Schwartzes had coverage under
the Kroger ERISA plan. Because the Schwartzes didn't plead facts which would
entitle them to any relief under ERISA and their negligence claim is preempted,
their complaint must be dismissed. Second, the Anthem defendants argue that
the Schwartzes failed to plead that they exhausted their administrative remedies
under either the Kroger ERISA plan or the Anthem Medicaid plan as a condition
precedent to filing suit required by law. Finally, the Anthem defendants argue
that the complaint should be dismissed because, as a matter of law, they didn't

owe a duty of care to the Schwartzes. All parties agree that Indiana law applies to any cognizable state law claim.

## I.   ERISA Preemption

ERISA section 514(a) expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title." 29 U.S.C. § 1144(a). The employee benefit plans in section 1003(a) are those that are "established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce . . . ." 29 U.S.C. § 1003(a)(1). The only remedy available to a plaintiff suing an ERISA plan for plan benefits is found in ERISA section 502(a)(1)(B): "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B).

"The structure and legislative history indicate that the words 'relate to' [in ERISA section 514(a)] are intended to apply in their broadest sense. ERISA preemption is, therefore, not limited to displacement of state laws affecting employee benefit plans, but rather extends to any state cause of action that has a 'connection or reference to' an ERISA plan." Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral Assocs., P.A., 53 F.3d 172, 174 (7th Cir. 1995) (citations omitted); see also FMC Corp v. Holliday, 498 U.S. 52, 58 (1990) ("The pre-emption clause is conspicuous for its breadth. It establishes as

an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA.").

However, "pre-emption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with [ERISA] plans, as is the case with many laws of general applicability." *E.g.*, New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 661 (1995). "[T]o determine whether a state law has the forbidden connection, [courts] look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans . . . ." Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 325 (1997) (citations omitted). "[W]here 'federal law is said to bar state action in fields of traditional state regulation, . . . [courts] worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id.; *see also* New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. at 656 ("We simply must go beyond the unhelpful text and the frustrating difficulty of defining ["relate to"], and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.").

ERISA section 514(a) "indicates Congress's intent to establish the regulation of employee welfare benefit plans 'as exclusively a federal concern.'" New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. at 656. "Congress intended 'to ensure that plans and plan sponsors

would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . ., [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'" Id. at 656-657 (citing Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 141 (1990)). "The basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Id. at 657; *see also* 29 U.S.C. § 1001.

This circuit hasn't defined the precise sweep of ERISA's preemption provision regarding claims against a non-ERISA-regulated secondary insurer whose policy acts as gap coverage for insurance provided by an ERISA plan. The Anthem defendants argue that the Schwartzes's claim against Anthem "relates to" an ERISA plan and so is preempted because the out-of-pocket maximums and deductibles of the Kroger plan had to be assessed in order to activate the secondary coverage under the Anthem plan.

The types of cases that have been considered "too tenuous, remote, or peripheral" to be ERISA preempted "include: a state garnishment of a spouse's pension income to enforce alimony and support orders; a defamation lawsuit against a plan by a doctor; a suit against an ERISA plan for unpaid rent; or a suit against an ERISA plan for unpaid attorneys' fees. . . . These cases are all 'run-of-the-mill' tort claims. None involved a suit by a plan participant against a plan. Nor did they concern allegations of negligence based on a failure to treat

where the plan denied benefits for the proposed treatment. They also involve relationships arising from something other than a benefit plan . . . ." Jass v. Prudential Health Care Plan, Inc, 88 F.3d 1482, 1494-1495 (7th Cir. 1996). The circuit court speculated in Pohl v. National Benefits Consult, Inc. that ERISA section 514(a) wouldn't pre-empt the claim of a plan participant who slipped on a banana peel in a plan administrator's office even though "that slip-and-fall liability would increase [the plan administrator's] costs and perhaps therefore the fee it charged for administering the employee welfare plan, and the added fee might hurt the participants." 956 F.2d 126, 128 (7th Cir. 1992).

The line of cases that is perhaps the closest to the Schwartzes's claim involve suits for medical malpractice against in-network healthcare providers of ERISA plans because these defendants' services are administered based on the existence of an ERISA plan. ERISA doesn't preempt cases of this sort.[1] *E.g.*, Lehmann v. Brown, 230 F.3d 916, 920 (7th Cir. 2000) ("When the complaint alleges that a welfare-benefit plan has committed a tort—for example, when a physician employed by a HMO that has been offered as a benefit to employees commits medical malpractice—the claim must arise under state law, because ERISA does not attempt to specify standards of medical care."); Wigdahl v. Fox Valley Family Physicians, 2018 WL 4520380, at *1 (N.D. Ill. Sept. 21, 2018) (citing Clevenger v. Eastman Chem. Co., 2007 WL 2458474, at *3 (S.D. Ill. Aug.

---

[1] These cases contrast from a situation in which an in-network healthcare provider negligently concludes that a particular course of treatment is unnecessary, amounting to a denial of benefits. These types of cases are preempted by Section 514(a). *E.g.*, Jass v. Prudential Health Care Plan, Inc, 88 F.3d 1482 (7th Cir. 1996).

24, 2007) (to find that ERISA requires preemption of claims concerning the quality of benefits received "would be to effectively federalize the area of medical malpractice law")).

The court concludes that ERISA section 514(a) doesn't preempt state law negligence claims against a secondary insurer whose only relation to an ERISA plan is that its coverage kicks in when coverage under an ERISA plan isn't available. Anthem wasn't in privity with Kroger; the only "relation" between the Anthem and Kroger plans is that the Schwartzes sought out additional insurance to supplement the Kroger plan. It stretches credulity to say that this relationship arose out of the terms of the Kroger plan. *See* Jass v. Prudential Health Care Plan, Inc, 88 F.3d at 1495. If this circuit's caselaw refrains from imposing ERISA preemption on claims for medical malpractice against in-network providers who are in privity with an ERISA plan, then imposing ERISA preemption on claims for negligence against even more tangential defendants is (without more) inappropriate. Were this connection enough to require preemption, then the limiting language of section 514(a) would have no effect. That is clearly not what Congress intended. *See e.g.*, Creel v. Fortis Benefits Ins. Co., 2000 U.S. Dist. LEXIS 20008, at *8 (S.D. Ind. Dec. 27, 2000). Imposing ERISA preemption on this type of state law claim would do little (if anything at all) to further Congress's goal of minimizing the administrative and financial burden on ERISA plans of complying with conflicting directives among states or between states and the Federal Government. But it would constitute an intrusion on the historic police

powers of the states. Accordingly, ERISA section 514(a) doesn't preempt the Schwartzes's negligence claim against the Anthem defendants.

## II.   Failure to Exhaust Administrative Remedies

Next, the Anthem defendants note that Indiana's Administrative Orders and Procedures Act provides the exclusive means for judicial review of a Medicaid agency action and states that "[a] person may file a petition for judicial review under this chapter only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review." Ind. Code § 4-21.5-5-4(a). The Anthem defendants argue that complaint doesn't allege that the Schwartzes exhausted their administrative remedies even though they were required to before seeking judicial process, so their complaint must be dismissed.

"Failure to exhaust administrative remedies is an affirmative defense . . . ." Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002) (citing Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999)); *see also* Mosely v. Board of Educ., 434 F.3d 527, 533 (7th Cir. 2006). "[C]ourts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses. Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim." Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012) (citing United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005)); *see also* King v. Indiana Harbor Belt Railroad, 2017 WL 9565363, at *15 (N.D. Ind., Feb. 1, 2017) ("[A] plaintiff has no obligation to allege

11

facts negating an affirmative defense."). However, "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." Walker v. Thompson, 288 F.3d at 1009; *see also* Brownmark Films, LLC v. Comedy Partners, 682 F.3d at 690 ("[W]hen all relevant facts are presented, the court may properly dismiss a case before discovery . . . on the basis of an affirmative defense."); Mosely v. Board of Educ., 434 F.3d at 533 ("Parties and courts occasionally take short-cuts and present certain arguments through a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), if the allegations of the complaint in the light most favorable to the plaintiff show that there is no way that any amendment could salvage the claim.").

The Schwartzes complaint isn't a candidate for this type of dismissal because they had no obligation to allege facts negating an affirmative defense, and nothing on the face of their complaint compels a conclusion that they failed to exhaust." Mosely v. Board of Educ., 434 F.3d at 533. The Anthem defendants' motion for dismissal on this ground is premature.


III.    Negligence Claim

Finally, the Anthem defendants argue that the Schwartzes can't recover under a negligence theory because the Schwartzes's complaint doesn't allege sufficient facts to show that the Anthem defendants could owe the Schwartzes a duty of reasonable care under Indiana law.

To premise a recovery on a theory of negligence under Indiana law, a plaintiff must establish in part "a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff . . . ." Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991), *overruled on other grounds*, Goodwin v. Yeakle's Sports Bar & Grill, Inc., 62 N.E.3d 384, 392 (Ind. 2016). "Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law." Id. "At the motion to dismiss stage, the court's duty 'is to consider whether a plaintiff's allegations could provide relief under any available legal theory.'" Sawyer v. Matthews, 2016 U.S. Dist. LEXIS 181679, at *7 (S.D. Ind. Dec. 15, 2016) (citing Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 421 (7th Cir. 1994)). "[T]he complaint need not identify a legal theory, and specifying an incorrect legal theory is not fatal." Bartholet v. Reishauer, 953 F.2d 1073, 1078 (7th Cir. 1992).

"Under Indiana law, it is well-established that there exists only one independent tort action that arises from an insurance contract: tortious breach of an insurer's duty to deal with his insured in good faith." Shree Hari Hotels, LLC v. Soc'y Ins. Co., 2013 U.S. Dist. LEXIS 52190, at *6 (S.D. Ind. Apr. 11, 2013) (citing Erie Insurance Company v. Hickman by Smith, 622 N.E.2d 515, 518-519 (Ind. 1993)). "The duty to deal in good faith 'includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his

13

claim.'" Inman v. State Farm Mut. Auto. Ins. Co., 981 N.E.2d 1202, 1207 (Ind. 2012) (quoting Erie Insurance Company v. Hickman by Smith, 622 N.E.2d at 519)).

The Schwartzes's complaint alleges that the Schwartzes "made numerous phone calls to Anthem, [Express Scripts], and/or Accredo. Each time, representatives of Anthem, [Express Scripts], and/or Accredo assured Jeff, Cari, and [Kroger Pharmacy] that [Kroger Pharmacy] would be allowed to dispense J.S.'s third dose of Synagis very soon. However, each time [Kroger Pharmacy] followed up with representatives of Anthem, [Express Scripts], and/or Accredo, they were informed the prescription for J.S.'s third dose of Synagis had to be filled by Anthem and [Express Scripts's] own specialty pharmacy, Accredo." Compl. ¶ 30. The Schwartzes also allege that "[f]rom January 25, 2018 through the middle of February of 2018, [Kroger Pharmacy] and Accredo continued to transfer the prescription request for J.S.'s third dose of Synagis back and forth, with each telling the other it could not fill the prescription. During this time, the effective window for J.S. to take her third dose of Synagis passed." Compl. ¶ 35. These allegations are sufficient to state a negligence claim upon which relief could be granted at the motion to dismiss stage against the Anthem defendants.

## IV.   Conclusion

For the foregoing reasons, the court DENIES the Anthem defendants' motions to dismiss for failure to state a claim upon which relief can be granted [Doc. Nos. 67 and 72].

SO ORDERED.

ENTERED:  March 9, 2021

                                    /s/ Robert L. Miller, Jr.
                                    Judge, United States District Court

Distribution: All electronically registered counsel of record